Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IX

| EL PUEBLO DE PUERTO RICO<br><br>Peticionario<br><br>v.<br><br>IONA FOURNIER GÓMEZ<br><br>Recurrida | TA2026CE00577<br><br>cons. con<br><br>TA2026CE00578 | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de Mayagüez<br><br>Caso número: ISCR202400610-613<br><br>Sobre:<br>Art. 199 C.P., Art. 245 C.P., Art. 274 C.P., Art. 284 C.P. |
| EL PUEBLO DE PUERTO RICO<br><br>Peticionario<br><br>v.<br><br>JUAN RODRÍGUEZ GONZÁLEZ<br><br>Recurrido | | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de Mayagüez<br><br>Caso número: ISCR202400627-628<br><br>Sobre:<br>Art. 199 C.P., Art. 274 C.P. |

Panel integrado por su presidenta, la juez Brignoni Mártir, el juez Salgado Schwarz y la juez Aldebol Mora.

# **S E N T E N C I A**

En San Juan, Puerto Rico, a 29 de mayo de 2026.

Comparece El Pueblo de Puerto Rico, por conducto de la Oficina del Procurador General y, mediante los recursos consolidados de epígrafe, nos solicita que revoquemos una *Resolución* emitida y notificada por el Tribunal de Primera Instancia, Sala Superior de Mayagüez, el 1 de mayo de 2026. En virtud del dictamen recurrido, el foro primario determinó que el Ministerio Público no demostró haber hecho lo razonablemente posible antes de que procediera la sustitución del testimonio de uno de sus testigos en el juicio, por el que este ofreció en la vista preliminar.

Por los fundamentos que se exponen a continuación, expedimos el *certiorari* y revocamos la *Resolución* recurrida. En consecuencia, se ordena la continuación de los procedimientos, de forma cónsona con los pronunciamientos consignados en esta *Sentencia*.

**I**

Como resultado de hechos ocurridos el 9 de julio de 2023 en La Parguera, el Ministerio Público presentó varias denuncias en contra de Iona Fournier Gómez (Fournier Gómez) y otra contra Juan Rodríguez González (Rodríguez González; en conjunto, los recurridos).[1] En específico, radicó cuatro (4) denuncias en contra de Fournier Gómez por destruir o inutilizar un bien inmueble ajeno valorado en más de quinientos dólares ($500.00); ejercer un derecho pretendido tomando la justicia por sí misma, en lugar de recurrir a la autoridad pública pertinente; conspirar, amenazar o atentar contra funcionarios del sistema de justicia; y emplear violencia o intimidación contra la autoridad pública. Según dispuesto en las denuncias, los actos imputados configuraron violaciones a los artículos 199 B, 274, 284 y 245 del Código Penal de 2012, 33 LPRA secs. 5269, 5367, 5377 y 5335.

En cuanto a Rodríguez González, el Ministerio Público presentó dos (2) denuncias en su contra. En estas, se le imputó actuar en mutuo y común acuerdo con Fournier Gómez y otros, para destruir o inutilizar un inmueble ajeno valorado en más de quinientos dólares ($500.00), así como ejercer un derecho pretendido, tomando la justicia por sí mismos, en lugar de acudir a la autoridad pública. Según dispuesto en las denuncias, los actos que se le imputaron configuraron violaciones a los artículos 199B y 274 del Código Penal de 2012, *supra*.

---

[1] Véase, *Denuncias*, anejo 3 del apéndice del recurso.

Tras obtener determinaciones de causa para arresto en contra de los recurridos en cuanto a todos los delitos imputados, el 24 de abril de 2024 el foro primario llevó a cabo la vista preliminar en cuanto a ambos, de manera conjunta. Como resultado, el foro *a quo* halló causa para juicio por los cuatro (4) cargos imputados contra Fournier Gómez y por los dos (2) cargos contra Rodríguez González.[2] Así, el 24 de mayo de 2024 el Ministerio Público presentó cuatro (4) acusaciones contra Fournier Gómez y dos (2) contra Rodríguez González.[3]

Tras una serie de incidencias, el 23 de abril de 2026, el foro primario celebró una vista, de conformidad con la Regla 109 de Evidencia, 32 LPRA Ap. VI, R. 109, sobre determinaciones a la admisibilidad de evidencia. Durante la vista, el Ministerio Público le solicitó al foro primario que le permitiera presentar prueba sobre las gestiones realizadas para localizar a José Caraballo Arroyo (Caraballo Arroyo), quien es testigo de cargo en el caso -por tratarse del contratista que preparó el estimado de los daños a la propiedad- con el fin de declararlo no disponible. Expresó que este no pudo ser localizado para comparecer, debido a que se negó a proveer su dirección. Asimismo, manifestó que los agentes encargados de las gestiones estaban presentes en sala, por lo que estaban disponibles para declarar al respecto.

A los fines antes mencionados, y por instrucciones del foro primario, el 24 de abril de 2026, el Ministerio Público consignó su solicitud por escrito, mediante una *Moción solicitando sustitución de testimonio bajo la Regla 806 de Evidencia.*[4] En esencia, adujo que la activación del mencionado mecanismo ocurre cuando al testigo le corresponde declarar, pues es en ese momento que surge la no

---

[2] Véase, anejo 4 del apéndice del recurso.

[3] Véase, *Documento principal,* entrada núm. 1 del apéndice del recurso.

[4] Véase, anejo 6 del apéndice del recurso.

disponibilidad. Asimismo, sostuvo que la no disponibilidad del testigo no era atribuible al Ministerio Público, debido a que se realizaron esfuerzos razonables y gestiones de buena fe que resultaron infructuosas. Como fundamento en derecho, el Ministerio Público aludió a las doctrinas que surgen de *Hardy v. Cross*, 565 U.S. 65 (2011) y *Ohio v. Roberts*, 448 U.S. 56 (1980). En lo particular, argumentó que, según *Hardy v. Cross*, no se le requiere al Estado agotar todas las gestiones posibles, mientras que, de acuerdo con *Ohio v. Roberts,* el criterio rector es la razonabilidad de las medidas adoptadas por este. Así las cosas, por estar en desacuerdo con dicha solicitud, el 26 de abril de 2026, Rodríguez González presentó un escrito en oposición.[5]

En consideración al planteamiento del Ministerio Público, el 27 de abril de 2026, el foro primario celebró una continuación de vista, conforme la Regla 109 de Evidencia, *supra*, según solicitada por el Ministerio Público, para evaluar los criterios expuestos en la Regla 806(A)(5) de Evidencia, 32 LPRA Ap. VI, R. 806(A)(5). A los fines de acreditar los criterios dispuestos en la mencionada disposición sobre la no disponibilidad de Caraballo Arroyo, el Ministerio Público presentó los testimonios del Agte. Raddy De León Lona (agente De León Lona) y el Agte. Jaime Rivera Cruz (agente Rivera Cruz), ambos del Departamento de Justicia.

Con posterioridad a la vista, el 28 de abril de 2026, Fournier Gómez consignó por escrito que también se opone a la solicitud del Ministerio Público.[6] Por su parte, el 29 de abril de 2026, el Ministerio Público presentó dos escritos de réplica, en reacción a los escritos en oposición presentados por Fournier Gómez y Rodríguez González, respectivamente.[7]

---

[5] Véase, anejo 7 del apéndice del recurso.
[6] Véase, anejo 9 del apéndice del recurso.
[7] Véase, anejos 11 y 12 del apéndice del recurso.

Así las cosas, luego de evaluar la prueba presentada por el Ministerio Público durante la vista del 27 de abril de 2026, el foro primario emitió y notificó la *Resolución* recurrida el 1 de mayo de 2026.[8] Mediante esta, concluyó que el Ministerio Público no demostró haber hecho lo razonablemente posible y que "no demostró esfuerzos razonables de buena fe",[9] antes de que procediera la sustitución del testimonio de Caraballo Arroyo en el juicio, por el que este ofreció en la vista preliminar. Por tanto, rechazó declararlo testigo no disponible, de conformidad con la Regla 806 de Evidencia, *supra.*

En cuanto al precedente dispuesto en *Hardy v. Cross*, el foro *a quo* descartó su aplicabilidad, tras razonar que, en dicho caso, "se indicó que la testigo había abandonado la jurisdicción, en Chicago, [y] aquí conforme lo expresado por el agente, la persona le expresó que se encontraba en el área metropolitana de Puerto Rico".[10] Asimismo, el foro primario le advirtió al Ministerio Público que, para que su solicitud prospere, "deberá cumplir con los esfuerzos razonables de buena fe, previo a la celebración de la vista bajo la Regla 109 de las Reglas de Evidencia y del juicio en su fondo".[11] Incluso, en el dictamen recurrido, el foro *a quo* añadió lo siguiente: "Deberá informar al Tribunal si continúa en su petición para proceder a calendarizar la correspondiente vista".[12]

En desacuerdo, el 8 de mayo de 2026, El Pueblo de Puerto Rico (El Pueblo) compareció, por conducto de la Oficina del Procurador General, y presentó dos recursos de *certiorari*; uno en

---

[8] Véase, *Resolución*, entrada núm. 2 del apéndice del recurso.
[9] *Resolución* recurrida, pág. 12. Entrada núm. 2 del apéndice del recurso.
[10] *Resolución* recurrida, pág. 12. Entrada núm. 2 del apéndice del recurso.
[11] *Resolución* recurrida, pág. 12. Entrada núm. 2 del apéndice del recurso.
[12] *Resolución* recurrida, pág. 12. Entrada núm. 2 del apéndice del recurso.

cuanto a Fournier Gómez y otro en cuanto a Rodríguez González.[13]

En ambos, adujo que el foro *a quo* cometió el siguiente error:

> El Tribunal de Primera Instancia erró al denegar la solicitud para declarar testigo no disponible al señor Caraballo Arroyo al amparo de la Regla 806 (A)(5) de Evidencia, *supra*, pese a que El Pueblo demostró que todos los esfuerzos razonables y de buena fe realizados para lograr su citación resultaron infructuosos.

En igual fecha, el Ministerio Público instó una moción en la que informó que, como parte de los anejos acompañados con los recursos consolidados, presentó de manera física en nuestra Secretaría, las regrabaciones correspondientes a las vistas de 23 y 27 de abril de 2026.[14] Así, nos solicitó autorización para que las mencionadas regrabaciones fuesen el método de reproducción de prueba oral.

Tras una evaluación preliminar de los recursos, el 11 de mayo de 2026, emitimos y notificamos una *Resolución*, en la que autorizamos las regrabaciones presentadas, como método de reproducción de la prueba oral. Asimismo, dispusimos que los recurridos contaban con el término de diez (10) días para presentarnos por escrito su posición, en cuanto a los méritos de los recursos de epígrafe.

El 18 de mayo de 2026, la representación legal de los recurridos compareció mediante una *Moción asumiendo representación legal, informativa y solicitud de extensión de término.* En esencia, nos solicitó una prórroga de diez (10) días para presentar su postura. En consideración a dicha solicitud, al siguiente día emitimos y notificamos una *Resolución*, en la que le concedimos hasta el 28 de mayo de 2026 para presentar un escrito en oposición.

---

[13] A solicitud de El Pueblo de Puerto Rico, ordenamos la consolidación de los recursos de epígrafe, mediante una *Resolución* emitida y notificada el 13 de mayo de 2026.

[14] Véase, anejos 5 y 8 del apéndice del recurso. Estos corresponden a las regrabaciones de las vistas de 23 y 27 de abril de 2026, respectivamente.

En cumplimiento con nuestra orden, el 28 de mayo de 2026 los recurridos presentaron una *Oposición a Petición de Certiorari*. Esencialmente, rechazaron que procediese expedir el *certiorari* solicitado por El Pueblo. Específicamente, adujeron que las gestiones realizadas por los agentes del Ministerio Público para localizar a Caraballo Arroyo fueron tardías y mínimas. De este modo, en su argumentación, se enfocaron, tanto en la alegada insuficiencia de las gestiones realizadas, como en el hecho de que estas comenzaran el 14 de abril de 2026, cuando el testigo estaba convocado para comparecer al tribunal el 20 de abril de 2026. Basado en lo anterior, argumentaron que admitir el testimonio anterior de Caraballo Arroyo violenta su derecho constitucional a la confrontación, a contrainterrogar y al debido de proceso de ley.

Con el beneficio de la comparecencia de ambas partes, procedemos a disponer de los recursos consolidados de epígrafe.

## II

### A

El *certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar discrecionalmente una decisión de un tribunal de menor jerarquía. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194 (2023); *Torres González v. Zaragoza Meléndez*, 211 DPR 821 (2023); *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004 (2021). En lo sustantivo, se le considera un recurso extraordinario, mediante el cual un foro revisor está facultado para enmendar los errores que cometió el foro revisado, cuando "el procedimiento adoptado no esté de acuerdo con las prescripciones de la ley". Artículo 670 del Código de Enjuiciamiento Civil, 32 LPRA sec. 3491.

Con el fin de que podamos ejercer de forma sabia y prudente nuestra facultad discrecional de entender o no en los méritos de los asuntos que nos son planteados mediante *certiorari,* la Regla 40 del

Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, señala los criterios que debemos considerar. Véase, *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 96-97 (2008); *BPPR v. SLG Gómez-López*, 213 DPR 314 (2023); *Rivera et al. v. Arcos Dorados et al.*, supra; *Pueblo v. Rivera Montalvo*, 205 DPR 352, 372 (2020). La precitada Regla dispone lo siguiente:

> El [T]ribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> (A)    Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B)    Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C)    Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D)    Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E)    Si la etapa de los procedimientos en que se presenta el caso es la más propicia para su consideración.
>
> (F)    Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G)    Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

4 LPRA Ap. XXII-B, R. 40.

Sin embargo, ninguno de los mencionados criterios es determinante por sí solo para este ejercicio y tampoco constituye una lista exhaustiva. *García v. Padró*, 165 DPR 324, 335 esc. 15 (2005). El Tribunal Supremo también ha expresado que, de ordinario, el foro revisor no debe intervenir con ejercicios discrecionales del foro revisado. Ello, "salvo que se demuestre que hubo un craso abuso de discreción, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial". *Zorniak Air Services v. Cessna Aircraft Co.*, 132 DPR

170, 181 (1992), citando a *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986). Véase, además, *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000).

**B**

La Enmienda Sexta de la Constitución de Estados Unidos consagra el derecho a la confrontación. En específico, dispone que: "[e]n todas las causas criminales, el acusado gozará del derecho [...] a carearse con los testigos en su contra [...]". Enmda. VI, Const. EE.UU., LPRA, Tomo 1. De manera análoga, nuestra Constitución también garantiza el mismo derecho. En lo pertinente, establece que: "[e]n todos los procesos criminales, el acusado disfrutará del derecho [...] a carearse con los testigos de cargo [...]". Art. II, Sec. 11, Const. ELA, LPRA, Tomo 1.

Sin embargo, este derecho no es absoluto. En particular, nuestro Tribunal Supremo ha reconocido que, en ciertas instancias, "el derecho del acusado a carearse y contrainterrogar a los testigos de cargo habrá de ceder ante la admisibilidad de **cierta prueba de referencia**, sin que ello implique una violación constitucional". *Pueblo v. Pérez Santos*, 195 DPR 262, 270 (2016). (Negrillas suplidas). Véase, además, *Pueblo v. Ruiz*, 203 DPR 527, 539-540 (2019).[15] Así, en cuanto a excluir aquella prueba de referencia que el Ministerio Público se proponga presentar, el Tribunal Supremo Federal considera que la cláusula de confrontación únicamente se activa ante declaraciones testimoniales. Véase, *Crawford v. Washington*, 541 U.S. 36 (2004).

De conformidad con lo anterior, los mecanismos contenidos en la Regla 806 de Evidencia, 32 LPRA Ap. VI, R. 806, sobre la no disponibilidad de la persona testigo, constituyen excepciones a la

---

[15] *Resolución* emitida el 6 de noviembre de 2019. (Cita del voto particular disidente del Juez Asociado Estrella Martínez, al cual se unió la Jueza Presidenta, Oronoz Rodríguez).

regla de exclusión de prueba de referencia. En particular, el inciso (A) codifica aquellas ocasiones en que un tribunal puede declarar no disponible a un testigo, para fines de admisibilidad de prueba de referencia. En específico, el subinciso (5) dispone que un testigo podrá ser declarado no disponible cuando "está ausente de la vista y quien propone la declaración ha **desplegado diligencia** para conseguir su comparecencia mediante citación del tribunal". 32 LPRA Ap. VI, R. 806(A)(5). (Negrillas suplidas).

Ahora bien, analizar lo que se considera diligencia, para fines de determinar la aplicabilidad de la Regla 806(A)(5) de Evidencia, *supra*, ha sido objeto de interpretación jurisprudencial. Por ejemplo, en *Berger v. California*, 393 U.S. 314, 315 (1969), el Tribunal Supremo Federal indicó que la ausencia de un testigo por este no encontrarse en la jurisdicción, no justifica sin más el uso en el juicio del testimonio que este prestó en vista preliminar. Ello, *a menos que* el Estado realice gestiones de buena fe para conseguir que el testigo comparezca al juicio a declarar.

Asimismo, en *Ohio v. Roberts*, 448 U.S. 56 (1980), el Alto Foro Federal resolvió que si un testigo abandona la jurisdicción y el Ministerio Público contacta a familiares que desconocen su paradero, este no está obligado a continuar realizando gestiones cuya probabilidad de éxito resulta mínima. De forma cónsona, más recientemente, en *Hardy v. Cross*, 545 U.S. 65 (2011), dicho foro reiteró que no es obligación del Estado agotar todas las vías posibles. Al respecto, el Alto Foro Federal interpretó lo siguiente:

> As we observed in *Roberts*, when a witness disappears before trial, it is always possible to think of additional steps that the prosecution might have taken to secure the witness' presence, see 448 U. S., at 75, but **the Sixth Amendment does not require the prosecution to exhaust every avenue of inquiry, no matter how unpromising**.

*Íd.*, págs. 71-72. (Negrillas suplidas).

En Puerto Rico, nuestro Tribunal Supremo ha realizado un análisis cónsono con aquel esbozado por el Alto Foro Federal. Por ejemplo, en *Pueblo v. Ruiz Lebrón*, 111 DPR 435 (1981), nuestro Alto Foro analizó el alcance de la entonces vigente Regla 64 de Evidencia -equivalente a la Regla 806, *supra*, actual- a los fines de avalar el precedente previamente establecido en *Barber v. Page*, 390 U.S. 719 (1968) y, subsiguientemente, en *Ohio v. Roberts*, supra. Así, nuestro Alto Foro validó que la exigencia constitucional de confrontación no queda satisfecha a menos que el Ministerio Público realice esfuerzos de buena fe para conseguir la presencia del testigo en el juicio. *Pueblo v. Ruiz Lebrón*, supra, pág. 544.

De modo similar, en *Pueblo v. Pellot Pérez*, 121 DPR 791, 797 (1988), nuestro Alto Foro también interpretó el alcance de la entonces vigente Regla 64(A)(5) de Evidencia, equivalente a la actual Regla 806(A)(5), *supra*. En lo pertinente, el Tribunal Supremo recalcó que es necesario que el proponente de la declaración de testigo no disponible "demuestre haber desplegado diligencia para conseguir su comparecencia mediante citación del tribunal".

A la luz de la normativa antes expuesta, procedemos a disponer del caso ante nuestra consideración.

**III**

Luego de evaluar los recursos consolidados de epígrafe, en consideración a los criterios que emanan de nuestra Regla 40, *supra*, ejercemos nuestra jurisdicción revisora para revocar el dictamen recurrido. Veamos.

Mediante el único señalamiento de error formulado en los recursos de epígrafe, El Pueblo adujo que el foro primario erró al denegar su solicitud para declarar testigo no disponible a Caraballo Arroyo, al amparo de la Regla 806 (A)(5) de Evidencia, *supra*. Ello, a pesar de que El Pueblo demostró que todos los esfuerzos realizados

para lograr la citación del testigo fueron razonables y de buena fe, y que estos resultaron infructuosos. Tiene razón.

En los recursos de epígrafe, El Pueblo adujo que, con la prueba desfilada durante la vista llevada a cabo el 27 de abril de 2026, el Ministerio Público acreditó haber realizado todas las gestiones razonables a su alcance, sin éxito. Destacó que la prueba presentada incluso demostró que el Ministerio Público logró contacto telefónico con Caraballo Arroyo, pero que este se negó a comparecer y a proveer la información de contacto que se le solicitó, para poder diligenciarle la citación.

Por su parte, en la *Resolución* recurrida, el foro *a quo* resaltó que el agente De León Lona esperó hasta el 14 de abril de 2026 para iniciar las gestiones conducentes a localizar a Caraballo Arroyo, es decir, justo antes de la fecha en que originalmente estuvo pautada la vista al amparo de la Regla 109 de Evidencia, *supra.* Ello, a pesar de que el tribunal había expedido la citación de este testigo el 17 de marzo de 2026.

Asimismo, el foro primario cuestionó que, entre las gestiones realizadas, el agente De León Lona no indagara respecto al negocio Bar Boat To Go ni intentara llamar al lugar, a pesar de conocer que Caraballo Arroyo es el propietario de este negocio. También consideró que, tras ser contactado por Caraballo Arroyo, el agente De León Lona pudo realizar gestiones para obtener de la compañía de teléfonos alguna dirección dónde localizar al testigo.

En cuanto al agente Rivera Cruz, el foro *a quo* consideró que este también pudo haber intentado contactar a Caraballo Arroyo por medio del negocio Bar Boat To Go, lo cual no hizo. Asimismo, cuestionó el que dicho agente testificara que entrevistó a catorce personas que no quisieron dar su nombre. De modo similar, en cuanto a ambos testimonios, el foro primario reseñó en el dictamen recurrido que se limitaran a realizar las gestiones en horas

laborables. Ello, en consideración a que los hechos que motivaron la no disponibilidad del testigo en *Hardy v. Cross* conllevaron visitas a todas horas del día y de noche.

Basado en lo anterior, el foro primario concluyó que el Estado no demostró que hiciera todo lo razonablemente posible, antes de que proceda la sustitución del testimonio del testigo con el vertido en vista preliminar. Diferimos de la apreciación del foro *a quo*.

Este Foro tuvo la oportunidad de escuchar las regrabaciones presentadas por El Pueblo, correspondientes a las vistas llevadas a cabo por el foro primario los días 23 y 27 de abril de 2026, de conformidad con la Regla 109 de Evidencia, *supra*. Durante la vista del 27 de abril, el Ministerio Público tuvo la oportunidad de presentar los testimonios de los agentes De León Lona y Rivera Cruz. Ello, con el propósito de acreditar la suficiencia y la razonabilidad de las gestiones infructuosas que ambos realizaron para lograr la comparecencia de Caraballo Arroyo al juicio, en calidad de testigo de cargo.

En el caso del agente De León Lona, este declaró que obtuvo la información de contacto -entiéndase, número telefónico y dirección física- de Caraballo Arroyo del sistema DAVID, el cual se nutre de la información en poder del Departamento de Transportación y Obras Públicas.[16] Asimismo, detalló que intentó comunicarse al número telefónico que obtuvo del sistema DAVID, aproximadamente en tres a cuatro ocasiones, sin éxito.[17]

Asimismo, de acuerdo con lo que testificó el agente De León Lona, el 14 de abril de 2026, en horas de la tarde, acudió con la citación a la dirección física residencial en La Parguera, Lajas, que obtuvo del sistema DAVID.[18] Según explicó, allí entrevistó a una

---

[16] Regrabación de la vista del 27 de abril de 2026, minuto 10:08-11:25.
[17] Regrabación de la vista del 27 de abril de 2026, minuto 10:45-11:06.
[18] Regrabación de la vista del 27 de abril de 2026, minuto 13:12-13:18.

persona que le informó vivir en el lugar por los pasados seis meses, tiempo durante el cual Caraballo Arroyo no ha residido allí.[19]

A pesar de lo anterior, el agente De León Lona declaró que, el 16 de abril de 2026, en horas de la tarde, recibió una llamada de Caraballo Arroyo, a su número de teléfono personal.[20] Sin embargo, detalló que, al explicarle que era necesaria su comparecencia al tribunal para diligenciarle la citación, este respondió de manera hostil, se negó a cooperar y rehusó proveer su dirección de contacto actual.[21] Únicamente mencionó que en la actualidad reside en el área metropolitana.[22] Asimismo, a pesar de insistirle en la necesidad de que proveyera su información y de que compareciera para una vista el 20 de abril de 2026, el testigo le respondió al agente que no comparecería.[23] El agente De León Lona explicó que, posteriormente, intentó llamar de vuelta a Caraballo Arroyo, pero las llamadas eran enviadas directamente al buzón de voz.[24]

Por su parte, el agente Rivera Cruz declaró que, en este caso, su rol consistió en entregar *subpoenas* a las oficinas de la Autoridad de Acueductos y Alcantarillados (AAA), LUMA y el Centro de Recaudación de Ingresos Municipales (CRIM) de Mayagüez, con el propósito de obtener una dirección física donde localizar a Caraballo Arroyo.[25] Asimismo, se le ordenó diligenciar una citación al testigo, en la dirección física que ubica en La Parguera.[26] En resumen, declaró que las gestiones realizadas con la AAA y LUMA resultaron infructuosas, debido a que la primera produjo una dirección en

---

[19] Regrabación de la vista del 27 de abril de 2026, minutos 11:59; 12:15; 13:20; 13:24; 15:37; 15:43.
[20] Regrabación de la vista del 27 de abril de 2026, minuto 15:48-16:26.
[21] Regrabación de la vista del 27 de abril de 2026, minuto 15:48-16:26.
[22] Regrabación de la vista del 27 de abril de 2026, minuto 16:27-16:36.
[23] Regrabación de la vista del 27 de abril de 2026, minuto 16:38-16:57.
[24] Regrabación de la vista del 27 de abril de 2026, minuto 17:06-17:16.
[25] Regrabación de la vista del 27 de abril de 2026, minutos 53:13-53:44; 58:06-58:13.
[26] Regrabación de la vista del 27 de abril de 2026, minuto 53:13-53:44.

Yauco donde Caraballo Arroyo no pudo ser localizado, mientras que no se recibió respuesta oportuna por parte de LUMA.[27]

En cuanto al CRIM, el agente Rivera Cruz destacó que obtuvo la misma dirección de La Parguera a la que había acudido previamente el agente De León Lona y que no obtuvo información adicional sobre otras propiedades vinculadas al testigo.[28] Detalló que él también acudió allí con la citación y habló con alrededor de ocho personas en el área de Parguera Court y negocios aledaños, sin éxito.[29] Basado en las gestiones antes detalladas, la citación fue diligenciada de manera negativa.[30]

Además, declaró que, el 24 de abril de 2026, acudió a la dirección de Yauco que obtuvo de la AAA, donde supo que allí residía un individuo de nombre José Caraballo Pérez, quien indicó no conocer a Caraballo Arroyo.[31] Asimismo, compartió que, posteriormente, volvió al área de La Parguera, donde conversó con otras seis personas, nuevamente sin lograr obtener la información necesaria para diligenciar la citación a Caraballo Arroyo.[32]

Así las cosas, luego de considerar las posturas de las partes, así como lo declarado por ambos agentes el 27 de abril de 2026 y el derecho aplicable, consideramos que el Ministerio Público acreditó haber realizado gestiones suficientes y razonables que satisfacen las exigencias de la Regla 806(A)(5) de Evidencia, *supra*, y su jurisprudencia interpretativa. Si bien la regla citada requiere que quien propone la declaración haya desplegado diligencia para conseguir la comparecencia del testigo, el Tribunal Supremo Federal considera que el Estado no está obligado a agotar todas las vías posibles.

---

[27] Regrabación de la vista del 27 de abril de 2026, minuto 58:14-59:20.
[28] Regrabación de la vista del 27 de abril de 2026, minuto 59:24-1:00:11.
[29] Regrabación de la vista del 27 de abril de 2026, minuto 1:00:20-1:02:18.
[30] Regrabación de la vista del 27 de abril de 2026, minuto 1:02:13-1:02:18.
[31] Regrabación de la vista del 27 de abril de 2026, minuto 1:02:10-1:01:56.
[32] *Íd.*

En este caso, no solo ambos agentes testificaron en torno a la variedad de gestiones infructuosas que realizaron; todas conducentes a localizar a Caraballo Arroyo para diligenciarle la citación emitida por el tribunal. Incluso, el agente De León Lona llegó a conversar vía telefónica con Caraballo Arroyo, quien, consciente de que se requería su comparecencia so pena de desacato, se rehusó a cooperar e indicó someramente encontrarse en el área metropolitana, sin especificar dónde.

Cabe enfatizar el hecho de que, con posterioridad, el agente Rivera Cruz realizó gestiones adicionales, todas conducentes a conseguir alguna otra dirección donde localizar a Caraballo Arroyo, sin que resultara posible localizarle. Incluso, llama a nuestra atención que ninguna de estas gestiones arrojó alguna dirección en el área metropolitana.

En fin, debido a que el Ministerio Público satisfizo el estándar correspondiente a la Regla 806(A)(5) de Evidencia, *supra*, procede declarar a Caraballo Arroyo como no disponible, para fines de la admisibilidad como prueba de referencia del testimonio que este prestó durante la vista preliminar. Se cometió el error señalado.

### IV

Por los fundamentos que anteceden, expedimos el *certiorari* y revocamos la *Resolución* recurrida. En consecuencia, se ordena la continuación de los procedimientos, de forma cónsona con los pronunciamientos consignados en esta *Sentencia*.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones